No. 32,029

JUANITA G. SMITH, *Appellant,* v. CARL E. WEBB, *Appellee.*

(46 P. 2d 618)

Opinion filed July 6, 1935.

*Clarence R. Sowers,* of Wichita, for the appellant.

*C. H. Brooks, Willard Brooks, Howard T. Fleeson, Fred W. Aley, Carl G. Tebbe* and *Wayne Coulson,* all of Wichita, for the appellee.

The opinion of the court was delivered by

SMITH, J.: This was an action for damages on account of an automobile collision and to set aside a release. Judgment was for defendant. Plaintiff appeals.

The action was begun by alleging the injury of plaintiff in an automobile collision caused by the negligence of defendant on October 25, 1932. The petition further alleged that on January 9, 1933, an agent of defendant and claim adjuster for the Travelers Insurance Company which carried the insurance on defendant's car, obtained a release from plaintiff for $600, and that plaintiff was induced to sign the release by false and fraudulent representations made by the agent. The prayer of the petition was to set aside the release and for whatever relief might be just and proper.

The plaintiff was granted permission to amend the petition by inserting the words "first cause of action" after the words "alleges and says" in the first part of the petition and by inserting the words "second cause of action" at a later point in the petition. The petition was also amended by inserting the words "damages for $15,037" in the prayer. As thus amended, the petition stated two causes of action; one to set aside the release on the ground that it was obtained by fraud, and the other for damages growing out of the collision.

During the course of the trial plaintiff amended her petition so as to state specifically just what false and fraudulent representa-

tions the agent of the defendant and the insurance company made. This amendment was as follows:

> "That the said Carl E. Webb was broke and nothing could be secured against him; that said Carl E. Webb had not paid the premium on his automobile insurance policy and the Traveler's Insurance Company were not liable to pay any loss on it; also that Dr. E. S. Edgerton told him, Staplin, that there was only a slight concussion of the brain, and they only paid $350 in such cases; also that said Staplin either did or pretended to call the plaintiff's then attending physician, Dr. W. G. Rinehart, and after he had either talked to said Doctor Rinehart or pretended to, the said Staplin stated to this plaintiff that Doctor Rinehart had told him over the telephone that this plaintiff had made a speedy recovery, that she was all right now, and that there would be no after effects." (Italics ours.)

The answer was a general denial, a plea of contributory negligence on the part of plaintiff and an admission that plaintiff had signed a release discharging and releasing defendant from any liability arising out of the collision.

Trial was before a jury. The plaintiff produced evidence of the collision, of the extent of her injuries and of the representations made by the agent when he secured the release.

At the close of the plaintiff's evidence the defendant demurred to it. Counsel for defendant announced that he was directing his demurrer to both causes of action, but particularly the second one. That is the cause of action wherein the plaintiff sought to set aside the release. The court did not rule on the demurrer to the first cause of action. The court did sustain the demurrer to the second cause of action on the ground that the evidence of plaintiff did not prove the cause of action pleaded. It was announced that the first cause of action would be held open awaiting the action of this court on the appeal from the order sustaining the demurrer to the second cause of action. This appeal is from the order sustaining the demurrer.

The plaintiff argues that she was entitled to a jury trial of the question of whether the release was obtained by fraud and the action of the court in sustaining the demurrer deprived her of that right. Many authorities are cited on the proposition that an action for damages and to set aside a release may be pleaded in the same cause of action. We do not find it necessary to decide that interesting question. The effect of the ruling of the court was to hold that there had not been sufficient proof on a vital phase of the plaintiff's case to warrant its being submitted to the jury. It matters not

whether it is treated as a separate cause of action or a necessary element of the same cause of action. Obviously the release had to be set aside before plaintiff could recover.

We will direct our attention then to the evidence offered by plaintiff to prove her claim that the release should be set aside.

The allegations as to the false representations have been noted. They were—

1. That the defendant, Carl E. Webb, was broke and nothing could be secured against him. As to that the plaintiff's evidence proved by Carl Webb himself that he was broke.

2. That Carl E. Webb had not paid the premium on his insurance policy and the company was not liable to pay any loss on it.

3. That Dr. E. S. Edgerton told the agent that there was only a slight concussion of the brain and they only paid $350 in such cases.

4. That the agent called or pretended to call Doctor Rinehart and the agent stated that Doctor Rinehart told him that plaintiff had made a speedy recovery.

5. That the insurance company was about to go broke.

As to the second ground of fraud, all the negotiations between the claim adjuster and plaintiff took place in his office. The plaintiff was paid with a draft on the insurance company. She, no doubt, saw that it was such a draft before she accepted it and signed the release. In order for a misrepresentation to justify setting aside a release it must not only be fraudulent but must be such as the plaintiff was entitled to rely on.

In 1 Black on Rescission and Cancellation, 2d ed., 179, the rule is stated as follows:

"In order to rescind a contract or cancel an obligation on the ground of fraudulent misrepresentations, it is requisite not only that their falsity should be shown but also the fact that they were material to the transaction, that is to say, not trifling or unimportant, but relating to a substantial matter, and of such a character that the party defrauded would not have entered into the contract or given the obligation, or would not have accepted the terms agreed on, if he had known the truth of the matter. . . It is not necessary that the false representation should have been the sole cause of the contract, but it must have been of such a nature, weight, and force that without it the contract would not have been made."

This rule has been followed by this court.

*Odrowski v. Swift & Co.*, 99 Kan. 163, 162 Pac. 268, was a workmen's compensation case where the claimant sought to set aside a release. This court refused to set aside the release and held:

"The cancellation of a written contract, purporting to release an employer from further liability on account of an injury to a workman, is not justified by showing that misrepresentations were made to him as to his physical condition, unless it is also shown that he signed the release by reason of being misled thereby. And where he testifies that he signed it without reading it, not knowing that it was a release, he shows affirmatively that he was not induced to give his employer a full discharge through reliance on the statements made as to his condition." (Syl. ¶ 1.)

To the same effect is the rule in 26 C. J. 1141, also *Petroleum Co. v. Craig,* 112 Kan. 528, 212 Pac. 117. The rule is so well settled as not to need any further citations. It would be difficult to imagine a case where the rule just mentioned is any more applicable than the case at bar. The plaintiff was a young college student. The negotiations were carried on by a representative of the insurance company and when she was paid she was paid with a draft drawn on the insurance company. She cannot accept this draft drawn on the insurance company to pay a liability of Webb and say later that she accepted the draft and signed the release because the claim adjuster told her that Webb had not paid his insurance premium.

As to the third and fourth grounds of fraud, there is no evidence in the record but that the claim adjuster did talk to Doctor Rinehart and that the doctor told him what he said he told him.

As to the fifth ground of fraud, the mother of plaintiff testified that the claim adjuster told plaintiff that the Travelers Insurance Company was shaky and was going broke. At the same time she testified that the claim adjuster told plaintiff, among other things, that Webb had not paid the premium on his policy. Plaintiff testified that she believed these statements and would not have signed the release had she not believed these statements to be true. As has been said, she must have relied on the statements in order for them to constitute grounds for setting aside the release. Which statement did she rely upon? We have seen that it could not have been the one about the premium not being paid because she accepted the draft drawn on the insurance company in payment of her claim. The testimony of herself and her mother is a refutation of the claim that she relied on the truth of the alleged statement of the claim agent that the insurance company was about to go broke. It is a story of two people dealing at arms length. First, the claim adjuster offered her $350 and then $500 and finally she accepted the offer of $600.

Her answer to the offer of $500 was that it wasn't enough—she

wouldn't take it. There is no testimony in the record that she learned of the falsity of the statement that the insurance company was about to go broke before she tendered back the money and asked for the return of her release.

The statement must have been false in order to constitute grounds for setting aside a release, and she must have relied on it. The burden is upon plaintiff to prove its falsity and that she relied on it. Such things are never presumed. There is no evidence in this record that the statement about the insurance company was false. The only attempt to prove anything of the kind was the testimony of the claim adjuster that on the day when the release was signed he did not know anything about the financial condition of the company and had no reason to believe that the company was going broke. The proof does not meet the requirement that the statement must be proved to have been false.

We have examined this record carefully and cannot find any substantial evidence to support the allegations of the petition that the plaintiff was induced to sign the release by means of false representations.

The judgment of the trial court sustaining the demurrer is affirmed.